UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JONATHAN MULLANE, | ) | DOCKET NO. 1:18-CV-12618-PBS |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Removed from Suffolk Superior Court |
| v. | ) | Docket No. 1884-CV-03686 |
| | ) | |
| FEDERICO A. MORENO, | ) | |
| BREAKING MEDIA, INC., | ) | |
| and ELIE MYSTAL, in his individual | ) | |
| and corporate capacities, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**VERIFIED FIRST AMENDED COMPLAINT
AND DEMAND FOR TRIAL BY JURY**

COMES NOW Plaintiff Jonathan Mullane (hereinafter, "Plaintiff" or "Mullane"), and hereby submits his Verified First Amended Complaint in this action for declaratory and equitable relief, together with monetary damages, against Defendant Federico A. Moreno (hereinafter, "Defendant Moreno" or "Judge Moreno") in his individual capacity, Defendant Breaking Media, Inc. (hereinafter, "Defendant Breaking Media" or "Breaking Media"), and Defendant Elie Mystal (hereinafter, "Defendant Mystal" or "Mystal") (hereinafter, collectively, "Defendants").

The instant action before this Honorable Court pertains to the unlawful *ultra vires* interference of Defendant Moreno in connection with two (2) separate Massachusetts contracts:

(i)  an employment agreement between Plaintiff and the United States Attorney's Office (hereinafter, "USAO"); and

(ii) a separate employment agreement between Plaintiff and the United States Securities and Exchange Commission (hereinafter, "SEC").

As further explained herein, Defendant Breaking Media intentionally published and republished certain factually false and defamatory allegations of criminal conduct, including, *inter alia*, defamatory representations made by Defendant Moreno. Defendant Breaking Media further made

other factually false representations regarding Plaintiff, many of which were even contradicted by the public record. As a direct and foreseeable result of the wrongful acts and omissions of Defendants herein, the defamatory representations were thereupon republished within this Commonwealth, thereby causing Plaintiff further irreparable harm.

In support hereof, Plaintiff states and avers as follows:

## PARTIES

1.  Plaintiff Jonathan Mullane is a natural person and citizen of the Commonwealth of Massachusetts, and resides in Somerville, Middlesex County, Massachusetts.
2.  Defendant Federico A. Moreno is a natural person and citizen of the State of Florida.
3.  Defendant Breaking Media, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 611 Broadway, Suite 907D, New York City, NY 10012.
4.  Defendant Elie Mystal is a natural person and citizen of the State of New York.

## JURISDICTION AND VENUE

5.  This Court has *in personam* jurisdiction pursuant to Mass. Gen. Laws ch. 223A § 3, and because the exercise of jurisdiction by this Court comports with constitutional due process. The subject Massachusetts contracts were entered into by Plaintiff, a citizen of Massachusetts, while physically present in the Commonwealth.
6.  *Inter alia*, the unlawful acts and omissions of Defendants foreseeably caused the republication of the defamatory representations within the Commonwealth itself, for which Defendants are liable as a matter of law. See, e.g., Murphy v. Bos. Herald, Inc., 449 Mass. 42, 65 (2007).

## MATERIAL FACTS

7.     In or around July 2018, while present in Massachusetts, Plaintiff entered into a contractual employment agreement with the USAO. To wit, the USAO solicited certain services by Plaintiff, whereby Plaintiff agreed to work as a law clerk intern in the Miami, Florida office of the USAO.

8.     In or around December 2018, while present in Massachusetts, Plaintiff entered into a second, and entirely separate, contractual employment agreement with the SEC. Specifically, the SEC solicited certain services by Plaintiff, whereby Plaintiff agreed to work as a law clerk intern in the Miami, Florida office of the SEC.

9.     In or around April 2018, Defendant Moreno, a judge in the employ of the United States District Court for the Southern District of Florida, acted *ultra vires*, outside the scope of his professional authority, and beyond the purview of his judicial duties by willfully and knowingly interfering with Plaintiff's employment agreements with the USAO and SEC.

10.     At the time in question, Plaintiff was an employee of the USAO.

11.     Defendant Moreno, who was not Plaintiff's employer, informed Plaintiff in April 2018 of Defendant Moreno's intention to directly interfere with the employment practices of the executive branch of the federal government, to wit, the United States Department of Justice and USAO, and informed Plaintiff of his intention to directly cause the USAO to unlawfully sever its employment agreement with Plaintiff.

12.     Acting *ultra vires* and extra-judicially, Defendant Moreno unlawfully abused his authority and privileges as an Article III judge in order to willfully and knowingly interfere with the subject Massachusetts contracts and the employment practices of the executive branch of the United States government and the USAO.

13.     Defendant Moreno enjoyed a personal relationship with acting United States Attorney Benjamin G. Greenberg (hereinafter, "Attorney Greenberg").

14.     During a personal telephone call with Attorney Greenberg in or around April 2018, Defendant Moreno knowingly interfered with the aforesaid USAO employment contract by maliciously and falsely accusing Plaintiff of criminal conduct.

15. Defendant Moreno knew, or was reckless in not knowing, that the aforesaid allegations made by him against Plaintiff were factually false.

16. By accusing Plaintiff of criminal conduct, Defendant Moreno willfully and knowingly caused the USAO to sever its employment agreement with Plaintiff.

17. Defendant Moreno acted with "actual malice" and spite in his interference with the Massachusetts contracts, and deliberately intended to cause Plaintiff harm.

18. Indeed, Defendant Moreno was fully cognizant of the fact that, as an Article III judge limited in his jurisdiction and authority under the separation of powers doctrine, *inter alia*, Defendant Moreno was not authorized to compel and order the USAO—an agency which is part of the executive branch, as opposed to the judiciary—to terminate its contractual relationship with Plaintiff.

19. At all times relevant hereto, Defendant Moreno acted in clear absence of any jurisdiction over Plaintiff's employment relationships with the USAO and with the SEC[1].

20. Unfortunately for Plaintiff, Defendant Moreno's efforts were successful. As a direct result of Defendant Moreno's intentional interference with the aforesaid Massachusetts contractual agreement, the USAO thereupon breached the said agreement with Plaintiff. Plaintiff was subsequently terminated from his employment at the USAO.

21. By interfering with the aforesaid employment contract, Defendant Moreno knowingly acted with an improper motive and intended to directly harm Plaintiff.

22. Defendant Moreno knew, or was willful in not knowing, that his false representations to Attorney Greenberg and the USAO were not privileged, and were made in the absence of any jurisdiction.

23. Defendant Moreno knew, or was willful in not knowing, that the aforesaid allegation of criminal conduct would additionally harm Plaintiff's employment at the SEC.

24. Defendant Moreno harbored significant animosity and ill will toward Plaintiff, as proven by the April 2018 hearing transcript. [**EXHIBIT A**].

---

[1] A judge shall be personally subject to liability in his individual capacity when acting "in clear absence of jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (accord Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1871)).

25. During the subject April 2018 personal telephone call with Attorney Greenberg, Defendant Moreno engaged in wrongful means by intentionally or recklessly defaming and slandering Plaintiff.

26. More specifically, instead of requesting an investigation and/or first attempting to ascertain all of the pertinent facts, Defendant Moreno improperly stated to Attorney Greenberg—as **irrefutable fact**—that Plaintiff had engaged in criminal conduct.

27. Indeed, at no time relevant hereto has Defendant Moreno retracted the false representations made regarding Plaintiff—notwithstanding the fact that no criminal charges have ever been filed against Plaintiff.

28. Indeed, Defendant Moreno's accusations against Plaintiff during the personal April 2018 telephone call were so farfetched, illogical, and unsupported by the facts that not once has Plaintiff even been questioned by the USAO, the Federal Bureau of Investigation ("FBI"), or by any other law enforcement agency in connection therewith.

29. During the subject April 2018 telephone call, Defendant Moreno knowingly slandered Plaintiff by erroneously and maliciously stating to Attorney Greenberg that Plaintiff had violated 18 U.S.C. § 912, a criminal offense punishable by three (3) years in federal prison.

30. *Inter alia*, Defendant Moreno bizarrely claimed that Plaintiff unlawfully "pretended" to have been sent on behalf of the United States government to "deceptively" obtain copies of the record from Defendant Moreno's clerk in Plaintiff's personal **$1,600** credit card dispute.

31. Indeed, as this Honorable Court is aware, one need not be a federal employee in order to merely obtain certified copies of a publicly-accessible, unsealed $1,600 civil credit card dispute.

32. *Arguendo*, while Defendant Moreno may have been authorized to ask the USAO, in "good faith," to conduct a criminal investigation of any suspected criminal conduct, as may be permitted within the purview of his official duties, here, Defendant Moreno unlawfully acted *ultra vires* through personal communications by alleging criminal conduct by Plaintiff as an **irrefutable "fact"** to Attorney Greenberg, Plaintiff's employer.

33. At all times relevant hereto, Defendant Moreno was fully aware that Plaintiff was in the employ of Attorney Greenberg and the USAO.

34.     Defendant Moreno knew, or was willful in not knowing, that Plaintiff was presumed innocent of *all* criminal charges as a matter of law.

35.     In point of fact, even to this day, Plaintiff has never been charged with violating 18 U.S.C. § 912—or any other crime—by the USAO or any other law enforcement agency in connection herewith.

36.     Defendant Moreno's accusations against Plaintiff were stated as unquestionable, irrefutable "facts"—when in reality, Plaintiff was entitled to a presumption of innocence under the Due Process clause of the United States Constitution, *inter alia*.

37.     Accordingly, the *ultra vires* means by which Defendant Moreno interfered with the subject contracts during a personal telephone call were unlawful, as they entailed slander *per se* and an improper denial of Plaintiff's constitutional right to a presumption of innocence.

38.     Defendant Moreno improperly "called in a favor" with Attorney Greenberg during the aforesaid personal telephone call in order to interfere with the subject Massachusetts contracts. Indeed, the U.S. District Court for the Southern District of Florida, of which Defendant Moreno was formerly the chief judge, had appointed Attorney Greenberg to his position as an acting United States Attorney.

39.     In or around April 2018, acting *ultra vires*, extra-judicially, and without any jurisdiction, Defendant Moreno or his agents contacted the USAO and unlawfully demanded Plaintiff's confidential employment records, to wit, Plaintiff's timesheet.

40.     At no time relevant hereto did Defendant Moreno or his agents obtain any warrant therefor.

41.     By unlawfully demanding, and successfully obtaining, Plaintiff's confidential employment records without a warrant, Defendant Moreno violated both the Fourth Amendment of the United States Constitution and the Privacy Act of 1974, as codified under 5 U.S.C. § 552a *et seq.*

42.     At all times relevant hereto, Defendant Moreno had actual or constructive knowledge that his acts and omissions were unlawful, *ultra vires*, not within his jurisdiction, and did not constitute acts or omissions typically performed by Article III judges—let alone prosecutors.

43.     In addition to the foregoing, upon the initial filing of this action, Defendant Moreno unlawfully and improperly solicited taxpayer-funded legal representation by the USAO in

connection with his extra-judicial and *ultra vires* acts and omissions, as described herein, in violation of 28 C.F.R. 50.15[2] ("Representation of Federal officials and employees by Department of Justice attorneys").

44. Defendant Moreno's actions were discriminatory and in "bad faith," as they sought to prevent Plaintiff from exercising his right to petition the judiciary for redress, as guaranteed under the First Amendment of the United States Constitution.

45. Instead of questioning Plaintiff in chambers, Defendant Moreno ordered Plaintiff to appear in his courtroom for a "miscellaneous hearing"—without having legal counsel present—on or about April 10, 2018.

46. As further proof of Defendant Moreno's ill will and intent to cause Plaintiff harm, during the aforesaid hearing, Defendant Moreno abused his power, title, and authority as a federal judge in order to reiterate in open court <u>all</u> of the defamatory representations he had previously made regarding Plaintiff during his personal telephone call with Attorney Greenberg.

47. As further proof of Defendant Moreno's ill will and intent to cause Plaintiff harm, Defendant Moreno *himself* called Plaintiff on his personal mobile phone on or about April 9, 2018. In his recorded voice message, Defendant Moreno—fully apprised of the fact that Plaintiff was unrepresented by legal counsel—unethically engaged in deception by instructing Plaintiff to appear in his courtroom the following morning.

48. Acting without jurisdiction, Defendant Moreno falsely and deceptively informed Plaintiff that the scheduled hearing pertained to the <u>**civil**</u> $1,600 credit card dispute.

49. Defendant Moreno had actual knowledge of the fact that, in reality, the scheduled hearing pertained to a <u>**criminal**</u> matter.

---

[2] 28 C.F.R. 50.15(b) unambiguously states, in pertinent part: "[legal] [r]epresentation is <u>**not**</u> available to a federal employee whenever[] [t]he conduct with regard to which the employee desires representation <u>**does not reasonably appear to have been performed within the scope of his employment with the federal government**</u> [ . . . . ]" (Emphasis supplied). As explained hereinabove, Article III judges such as Defendant Moreno do not have any jurisdiction over the employment practices of the USAO. Naturally, such extra-judicial acts and omissions are not "within the scope of his employment."

50.   Defendant Moreno knew, or was willful in not knowing, that Plaintiff should have been informed of:

   (i)     the criminal nature of the hearing; and

   (ii)    Plaintiff's constitutional right to have legal counsel present.

51.   Defendant Moreno knew, or was willful in not knowing, that any accusations against Plaintiff made in open court would be transcribed by the court reporter and would become publicly available.

52.   Defendant Moreno—a leading candidate for the United States Supreme Court at the time in question—knew, or was reckless in not knowing, of the High Court's well-known holding in Miranda v. Arizona, 384 U.S. 436 (1966) pertaining to such criminal interrogations wherein persons such as Plaintiff are not "free to leave" and are deprived of their "freedom of action."

53.   The Miranda Court held, in pertinent part:

> "[t]he U.S. Const. amend. V privilege against self-incrimination is available **outside of criminal court proceedings** and serves to protect persons in **all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves.** Without proper safeguards, the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. **In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored.**" (Emphasis supplied) at 467.

54.   Defendant Moreno intentionally or recklessly disregarded Plaintiff's constitutional rights, in violation of the Court's holding in Miranda, supra.

55.   Plaintiff was not free to leave during the subject April 10, 2018 hearing.

56.   *Inter alia*, Plaintiff was denied his constitutional right to cross-examine his accuser, in violation of the Confrontation Clause of the Sixth Amendment of the United States Constitution.

57.    Plaintiff was further denied the right to cross-examine any witnesses, or to call any witnesses in his defense.

58.    At no time relevant hereto did Defendant Moreno inform Plaintiff of his rights under Miranda; this includes, without limitation, Plaintiff's right to be represented by an attorney in connection with all criminal matters, such as the matter in question.

59.    Defendant Moreno's willful disregard for Plaintiff's rights under Miranda further evidences Defendant Moreno's ill will and actual malice vis-à-vis Plaintiff.

60.    Defendant Moreno's representations—both before and during the subject April 10, 2018 hearing—are not protected by "absolute immunity" because they did not even remotely pertain to the adjudication of the civil $1,600 credit card dispute or the merits thereof.

61.    Subsequent to the foregoing events, on or about April 30, 2018, through its online publication "Above the Law," Defendant Breaking Media published an article entitled as follows:

### "JUDGE DETONATES PRO SE LAW STUDENT SO HARD I NOW MUST DEFEND A DUMB KID"

62.    *Inter alia,* the aforesaid article discussed Judge Moreno's accusations against Plaintiff. **[EXHIBIT B]**.

63.    The April 30 article regarding Plaintiff, a "private person," was in no way a matter of "public concern."

64.    *Arguendo,* while Defendant Moreno's improper and unlawful behavior may have been a matter of "public concern" given that, at the time in question, Defendant Moreno was a leading candidate to become the next associate justice of the United States Supreme Court, Plaintiff, a student and intern, was in no way a person of "public concern."[3]

---

[3] "[ . . . ] [A] private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention. It is speech on matters of **public concern** that is at the heart of the First Amendment's protection. In contrast, speech on matters of purely **private concern** is of less First Amendment concern." Bowman v. Heller, 420 Mass. 517, 525 (1995).

65. In no way was Defendant Breaking Media entitled to make a national publication maliciously defaming and attacking Plaintiff, a student and "private person."

66. Defendant Breaking Media's article constituted an *ad hominem* attack against Plaintiff—a student—by pejoratively referring to him as an "entitled ponce," "unethical," and a "dumb kid," *inter alia.* [**EXHIBIT B**].

67. The plain language of the April 30 article immediately demonstrates, to any reasonable reader, the spurious nature of the deceptive title claiming that the said article was written to "defend" Plaintiff.

68. As proven by the derogatory and abusive language contained in the aforesaid article, Defendant Breaking Media acted with malice and ill will vis-à-vis Plaintiff.

69. As proven by the abusive language contained in the aforesaid article, Defendant Breaking Media knew, or was willful in not knowing, that its defamatory representations would directly cause Plaintiff to lose current and future employment as a foreseeable consequence of the accusations of criminal conduct.

70. The subject article published by a "chief editor" of Defendant Breaking Media, Elie Mystal, Esq. (hereinafter, "Mystal"), included numerous material representations which were factually false.

71. Under the doctrine of *respondeat superior*, together with well-settled principals of agency and vicarious liability, Defendant Breaking Media is fully liable for the actions of Mystal, its employee and "chief editor."

72. By way of example only, at p. 2 ¶ 1, Defendant Breaking Media stated, in pertinent part:

> "[h]e [i.e., Plaintiff] was trying to file a petition of mandamus—which basically asks an appellate court to order Judge Moreno to work on his case faster. That's pretty rude."

73. The foregoing material representation is factually false.

74. Quite shockingly, Mystal, an attorney who purports to be a graduate of Harvard Law School, ignores the plain language of Rule 55(a) of the Federal Rules of Civil Procedure.

75. For the Court's reference, the said Rule 55(a) expressly provides as follows:

> "(a) **Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the **clerk** must enter the party's default." (Emphasis supplied).

76.   In the subject $1,600 civil credit card dispute, as unambiguously stated in the publicly available docket sheet, Plaintiff was attempting to have the **Clerk of Court** make an "entry of default"—*not* Defendant Moreno.

77.   While Plaintiff certainly considered requesting relief from the 11th Circuit Court of Appeals regarding the two (2) separate refusals of the Clerk of Court to make an "entry of default" in violation of Rule 55(a), at no time did Plaintiff request *any* "writ of mandamus" against Defendant Moreno in any court.

78.   At no time relevant hereto did Plaintiff demand that "Judge Moreno work on his case faster[.]"

79.   As an attorney and graduate of Harvard Law School, Mystal knew, or was reckless in not knowing, that the foregoing assertion was patently false.

80.   *Arguendo*, even if Mystal's rudimentary familiarity and/or understanding of the rules of procedure was lacking, a cursory examination of the docket sheet in the aforesaid case would have demonstrated to any reasonable person that the foregoing representation was factually incorrect. **[EXHIBIT C]**.

81.   By way of example only, at p. 2 ¶ 8, Defendant Breaking Media further stated, in pertinent part:

> "[t]hen, to gain entry into [Defendant Moreno's] chambers, [Plaintiff] dropped his USAO cred, even though he was just an intern, and even though he was there for reasons that had nothing to do with his internship."

82.   The foregoing representation—which is stated as an "irrefutable" fact, as opposed to an allegation or a personal opinion—is patently false, and constitutes libel *per se* as it entails an accusation of <u>criminal</u> conduct by Plaintiff.

83.   As explained hereinabove, Plaintiff merely sought to obtain copies of the record. Accordingly, there can be no logical reason why Plaintiff—or any reasonable person in his

position, for that matter—would feel the need to commit a criminal offense in order to obtain said copies, which are a matter of public record.

84. Pursuant to 18 U.S.C. § 912, "[w]hoever falsely assumes or **pretends to be an officer or employee acting under the authority of the United States or any other department**, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be find under this title or imprisoned not more than three years, or both." (Emphasis supplied).

85. As an attorney and graduate of Harvard Law School, Mystal had actual or constructive knowledge of the aforesaid criminal statute.

86. Because Mystal had actual or constructive knowledge of the law, Mystal's acts and omissions were willful or reckless.

87. By way of example only, at p. 2 ¶ 8, Defendant Breaking Media further stated, in pertinent part:

> "Jon Mullane [i.e., Plaintiff herein] is a little brat who with a USAO internship who had an ex-parte conversation in judge's chambers while trying to file a motion arguing that the judge was lazily ignoring his pro se complaint."

88. Here, not only does the foregoing demonstrate the ill will and actual malice of Defendant Breaking Media vis-à-vis Plaintiff, the material representation is factually false.

89. As explained hereinabove, and as clearly reflected in the publicly-available docket sheet, at no time relevant hereto did Plaintiff file any motion whatsoever "arguing that the judge was lazily ignoring his *pro se* complaint."

90. As reflected in the publicly available docket sheet, Plaintiff never filed any such motion.

91. By way of example only, at p. 2 ¶ 1, Defendant Breaking Media further stated, in pertinent part:

> "[h]e [i.e., Plaintiff] didn't know where to file the petition, and ended up asking the judge's career clerk, in the judge's chambers, ex-parte, what to do about it. That's pretty dumb."

92. In reality, Plaintiff correctly requested **copies of the record** in the correct place.

93. At no time relevant hereto was Plaintiff filing *any* "petition" whatsoever.

94. *Arguendo*, had Plaintiff in fact wished to file a petition for a "writ of mandamus," he would have filed in in the 11th Circuit Court of Appeals—not in any office of a <u>district</u> court.

95. As an attorney and graduate of Harvard Law School, Mystal knew, or was reckless in not knowing, the requirements of the Federal Rules of Appellate Procedure, together with the simple fact that a petition for a "writ of mandamus" must be filed in the Circuit Court of Appeals—not in a district court.

96. As Defendants Mystal and Breaking Media had access to all hearing transcripts and the docket sheet, Defendants Mystal and Breaking Media knew, or were reckless in not knowing, that Plaintiff was <u>not</u> looking to file any "writ of mandamus" in the district court.

97. In addition to the foregoing, as stated hereinabove, Plaintiff correctly went to the Clerk of Court's Office to request copies of the record.

98. The complete and utter disregard of Defendants Mystal and Breaking Media for the truthfulness and accuracy of the subject publication is rank unconscionable.

99. Indeed, Defendants Mystal and Breaking Media have demonstrated an unacceptable pattern of unlawful conduct, together with a complete disregard for the truthfulness and veracity of their factual assertions, by making defamatory and unfounded accusations of criminal conduct against numerous innocent persons such as Plaintiff.

100. By way of example only, in or around 2010, Defendants Mystal and Breaking Media published another article entitled "**RAPE POTPOURRI[,]**" wherein said Defendants falsely and maliciously accused an Illinois attorney of raping a 15 year-old girl. Defendants Mystal and Breaking Media wrote, *inter alia*, "Here at [Above the Law], we're your one-stop shop for breaking rape coverage. We cover the rape allegations of the rich and famous, as well as any alleged attorney rapists near you [ . . . . ]" Just as in the case at bar, those defamatory accusations were made with "actual malice" and were factually false. <u>See, e.g.,</u> <u>Meanith Huon v. Breaking Media, LLC et al.</u>, Docket No. 1:11-CV-03054, ECF 156 (N.D. Ill., September 12, 2012).

101.    Any reasonable person would find the inappropriate and pejorative language used to "describe" and defame Plaintiff in the subject Breaking Media article outrageous and offensive.

102.    The language used clearly demonstrates the actual malice, ill will, and malevolent intent of Defendants Mystal and Breaking Media vis-à-vis Plaintiff.

103.    By way of example, this language includes, without limitation, the following words Defendants Mystal and Breaking Media wrote in the subject article describing Plaintiff:

    (i)     "Dumb"

    (ii)    a "little brat"

    (iii)   "unethical"

    (iv)   an "idiot"

    (v)    "entitled ponce"

104.    By referring to Plaintiff using the above-mentioned pejorative and discriminatory term for an "effeminate man," Defendant Breaking Media unlawfully discriminated against Plaintiff on the basis of sexual orientation, in violation of Massachusetts law.[4]

105.    As a directly foreseeable consequence of Defendants' false accusations of criminal conduct against Plaintiff, many of which were initially made during the aforesaid April 2018 personal telephone call by Defendant Moreno, together with the subsequent publication thereof by Defendants Mystal and Breaking Media, the SEC foreseeably breached the subject contract on May 3, 2018. [**EXHIBIT D**].

106.    Attorney Lisa Roberts, Esq. (hereinafter, "Attorney Roberts") of the SEC informed the University of Miami School of Law that the singular reason for the SEC's unilateral breach of its employment agreement with Plaintiff was the above-mentioned allegation of criminal conduct by Defendants.

---

[4] The Supreme Judicial Court has consistently held that harassing speech or conduct does *not* qualify as "protected speech." See, e.g., Commonwealth v. Welch, 444 Mass. 80 (2005).

107. Defendants knew, or were willful in not knowing, that their interference would foreseeably cause the SEC to unilaterally breach the subject employment agreement with Plaintiff.

108. Plaintiff incurred *significant* harm from Defendants' unethical and improper conduct as described herein.

109. *Inter alia,* Plaintiff suffered quantifiable economic damages due to the loss of work experience at both the USAO and SEC, which naturally would have provided Plaintiff with excellent employment prospects.

110. As a result of Defendants' egregious and unethical conduct, Plaintiff can no longer obtain positive work references from either the USAO or the SEC.

111. Unfortunately, as a result, Plaintiff's loss of future earnings over the course of his lifetime is substantial.

112. Plaintiff cannot secure legal employment in a position for which he is qualified as a direct result of his loss of personal and professional reputation.

113. As a foreseeable consequence of Defendants' acts and omissions, Plaintiff has been forced to abandon his career goals of practicing law on behalf of the federal government, together with his dream of one day practicing in the field of international litigation.

114. As a foreseeable consequence of Defendants' acts and omissions, Plaintiff was not offered any full-time employment with the federal government.

115. As a foreseeable consequence of Defendants' acts and omissions, the defamatory statements were foreseeably re-published within this Commonwealth and relied on by third parties in Massachusetts. [See, e.g., **EXHIBIT E**].

116. The subsequent republications of the defamatory statements within this Commonwealth caused Plaintiff further irreparable harm.

117. Given the foreseeable difficulties for Plaintiff to become a member of the Florida Bar, Plaintiff was forced to abandon his application thereto as a direct result of Defendants' intentional interference with the subject contracts.

118. As a result of Defendants' wrongdoing, Plaintiff foreseeably withdrew from the University of Miami School of Law.

119. In addition to the substantial harm to Plaintiff's legal career, Plaintiff has foreseeably suffered from depression, severe anxiety, and thoughts of suicide.

## COUNT I
### Libel *per se*
### (against Defendants Breaking Media and Mystal)

120.   Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

121.   At all times relevant hereto, Plaintiff was, and remains, a "private person."

122.   At all times relevant hereto, Plaintiff acted individually, and not on behalf of the United States or its agencies.

123.   Plaintiff has not actively sought any publicity, public note, or prominence outside of implementing his own business affairs in private transactions.

124.   Plaintiff is not a "public figure" or official within the meaning of New York Times v. Sullivan, 376 U.S. 254 (1964) and its progeny.

125.   Defendants Mystal and Breaking Media intentionally published to the general public the subject April 30, 2018 article in writing.

126.   The subject article directly pertained to Plaintiff, as expressly stated in its defamatory title.

127.   The subject article was defamatory.

128.   The subject article contained numerous false representations of "fact."

129.   Defendants Mystal and Breaking Media acted with "actual malice" within the meaning of New York Times, supra, because they knew, or were reckless in not knowing, that their material representations in the subject article pertaining to Plaintiff were false.

130.   *Inter alia*, a cursory review of the available public records immediately reveals the falsity of Defendant Mystal and Breaking Media's misrepresentations.

131.   Defendants Mystal and Breaking Media acted with "actual malice" within the meaning of Mass. Gen. Laws ch. 231 § 92, which is defined as "ill will" or "malevolent intent."[5]

132.   In the subject Breaking Media article, the abusive and derogatory language used to describe Plaintiff, e.g., "entitled ponce," "dumb," "brat," etc., cannot possibly be construed or interpreted as anything but malevolent.

---

[5] See, e.g., Noonan v. Staples, Inc., 556 F.3d 20 (1st Cir. 2009).

133. Defendants Mystal and Breaking Media knew, or were reckless in not knowing, of the harm its defamatory representations would foreseeably cause Plaintiff. This includes, without limitation, the severe harm to Plaintiff's reputation, business opportunities, employment opportunities, social relationships, career, and health.

134. As a matter of law, the written representations of Defendants Mystal and Breaking Media constitute libel *per se*. *Inter alia*, Defendants Mystal and Breaking Media accused Plaintiff of having violated 18 U.S.C. § 912, a criminal offense punishable by three (3) years in federal prison.

135. The unlawful acts and omissions of Defendants Mystal and Breaking Media were the proximate cause of the foreseeable harm incurred by Plaintiff.

136. In addition to monetary and compensatory damages, Plaintiff respectfully requests that this Court issue a mandatory injunction ordering Defendants Breaking Media and Mystal to remove the subject defamatory article, together with any and all other defamatory representations regarding Plaintiff, from the internet and from its website.

## COUNT II
### Slander *per se*
### (against Defendant Moreno)

137. Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

138. In or around April 2018, Defendant Moreno engaged in a personal telephone call with Attorney Greenberg, Plaintiff's employer.

139. During the subject telephone call, Defendant Moreno stated—as irrefutable "fact"—that Plaintiff had violated 18 U.S.C. § 912, a criminal offense punishable by three (3) years in federal prison.

140. Because the subject slander entails accusation of criminal conduct, the slander is "*per se*," and Plaintiff's damages are presumed as a matter of law[6].

---

[6] Imputation of a crime is defamatory *per se*. Ellis v. Safety Ins. Co., 41 Mass. App. Ct. 630, 635 (1996).

141.   Defendant Moreno's representations were not protected by "absolute privilege," as they were made *ultra vires*[7] and in the absence of any jurisdiction.

142.   Defendant Moreno's representation was not protected by "qualified privilege," as Defendant Moreno acted with "actual malice" within the meaning of New York Times v. Sullivan, 376 U.S. 254 (1964) and its progeny.

143.   Defendant Moreno knew, or was reckless in not knowing, that the aforesaid defamatory accusation of criminal conduct was false.

144.   *Inter alia*, Defendant Moreno knew, or was reckless in not knowing, that Plaintiff did not need to "pretend" to be sent by the USAO merely in order to obtain copies of the publicly-available record.

145.   *Inter alia,* Defendant Moreno knew, or was reckless in not knowing, that Plaintiff's motion for an "entry of default" under Rule 55(a) pertained to the **Clerk of Court**, and not to Defendant Moreno himself.

146.   Defendant Moreno acted with "actual malice" within the meaning of Mass. Gen. Laws ch. 231 § 92, which is defined as "ill will" or "malevolent intent."

147.   The "ill will" of Defendant Moreno—for all of his *ultra vires* and extra-judicial acts and omissions, as described herein—is immediately apparent from the April 10, 2018 hearing transcript. [**EXHIBIT A**].

148.   The defamatory statements were "published" by Defendant Moreno to Attorney Greenberg, a third-party.

149.   Defendant Moreno knew, or was reckless in not knowing, of the harm his defamatory representations would cause Plaintiff. This includes, without limitation, the severe harm to Plaintiff's reputation, business opportunities, employment opportunities, social relationships, career, and health.

150.   Defendant Moreno's unlawful acts and omissions were the proximate cause of all of the foreseeable harm incurred by Plaintiff.

---

[7] See Buckley v. Fitzsimmons, 509 U.S. 259 (1993); see also Archie v. Lanier, 95 F.3d 438 (6th Cir. 1996).

## COUNT III
### Tortious Interference with Contractual Relations
### (against Defendants Moreno, Breaking Media, and Mystal)

151. Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

152. Plaintiff had two (2) separate contracts with two (2) separate third parties, to wit, the USAO and the SEC.

153. Defendants "willfully" and "knowingly," directly or indirectly, caused the USAO and the SEC to breach *both* of the said contracts.

154. Defendants lacked any privilege to induce the said breaches.

155. As described hereinabove, Defendants' deliberate interference was intentional, and was improper as to both motive and means.

156. Defendants acted with "actual malice," as Defendants' purposes were spiteful and malignant.

157. Defendants' intentional interference was the proximate cause of Plaintiff's harm.

158. All of Plaintiff's damages, as described more fully hereinabove, were the directly foreseeable result of Defendants' intentional interference.

## COUNT IV
### Tortious Interference with Advantageous Business Relations
### (against Defendants Moreno, Breaking Media, and Mystal)

159. Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

160. Plaintiff had two (2) separate business relationships with two (2) separate third parties, to wit, the USAO and the SEC.

161. Plaintiff enjoyed an economic benefit from each of the aforesaid business relationships, including, but not limited to: professional recommendations; work experience, which would have increased Plaintiff's job prospects and employability; learning and developing

critical legal expertise and abilities; and the important formation of professional and personal relationships with countless attorneys in the employ of the USAO and SEC.

162. Defendants knew, or were willful in not knowing, of the aforesaid business relationships.

163. As further described hereinabove, Defendants interfered with the two (2) separate business relationships through an improper motive and improper means.

164. Defendants acted with "actual malice," as Defendants' purposes were spiteful and malignant.

165. Defendants' interference was the proximate cause of Plaintiff's harm.

166. Plaintiff foreseeably lost the innumerable advantages of the two (2) business relationships as a direct and natural result of Defendants' conduct.

167. Defendants lacked any privilege to induce the said losses.

## COUNT V
### Tortious Interference with Prospective Economic Advantages
### (against Defendants Moreno, Breaking Media, and Mystal)

168. Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

169. Plaintiff enjoyed economic relationships between the USAO and the SEC which contained a reasonably probable future economic benefit or advantage to Plaintiff.

170. Defendants knew, or were willful in not knowing, of the existence of the two (2) aforesaid relationships.

171. Defendants knew, or were willful in not knowing, that their actions would interfere with the two (2) relationships and cause Plaintiff to lose, in whole or in part, the highly probable future economic benefits and advantages of the relationships.

172. Defendants acted with "actual malice," as Defendants' purposes were spiteful and malignant.

173. As further described hereinabove, Defendants "willfully" and "knowingly," either directly or indirectly, interfered with the two (2) separate business relationships through an improper motive and improper means.

174. Defendants acted with the sole purpose of harming Plaintiff, and acted by means that are dishonest, unfair, or otherwise improper.

175. Defendants' interference was the proximate cause of Plaintiff's harm.

176. Plaintiff foreseeably lost the innumerable advantages of the two (2) business relationships as a direct and natural result of Defendants' conduct.

177. Defendants both lacked any privilege to induce the said losses.

## COUNT VI
### Intentional Infliction of Emotional Distress
### (against Defendants Moreno, Breaking Media, and Mystal)

178. Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

179. As further explained hereinabove, Defendants acted intentionally vis-à-vis Plaintiff.

180. Defendants knew, or were willful in not knowing, that emotional distress was the likely and foreseeable result of his conduct.

181. Defendants' conduct, as described hereinabove, was extreme, outrageous, beyond the standards of civilized decency, and utterly intolerable in a civilized society.

182. *Inter alia*, discrimination on the basis of sexual orientation is inherently extreme and outrageous, and is contrary to both the Massachusetts Declaration of Rights and the common law of this Commonwealth.

183. Defendants are the direct and proximate cause of Plaintiff's distress.

184. Plaintiff foreseeably suffered—and continues to suffer—emotional distress as a result of Defendants' conduct.

185. The emotional distress sustained by the Plaintiff was severe and of a nature that no reasonable person could be expected to endure it.

## COUNT VII
### Violation of Mass. Gen. Laws ch. 93A § 9
### (against Defendant Breaking Media)

186. Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

187. Defendant Breaking Media is in the "trade" or "business" of operating an online publication within the meaning of Mass. Gen. Laws ch. 93A § 2 *et seq.*

188. Plaintiff is a "consumer" within the meaning of same, and a reader of Defendant Breaking Media's "Above the Law" publication.

189. Defendant Breaking Media was served, via first-class mail and electronic correspondence, a written demand for a "reasonable offer of settlement" pursuant to the said ch. 93A more than thirty (30) days prior to the filing of this action.

190. Collectively, all of Defendant Breaking Media's acts and omissions, as described herein, constitute unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A § 9, and the Attorney General's regulations published to enforce this law.

191. *Inter alia,* Defendant Breaking Media's unlawful discrimination based on sexual orientation constitutes an "unfair" and "deceptive" trade practice.

192. Defendant Breaking Media unfairly refused to make a reasonable offer of settlement to compensate Plaintiff for the harm incurred.

193. At all times relevant hereto, Defendant Breaking Media's unlawful acts and omissions were both "willful" and "knowing."

194. Pursuant to Mass. Gen. Laws ch. 93A § 9, Plaintiff is entitled to recover treble damages, together with reasonable attorneys' fees and costs.

## COUNT VIII
### Promissory Estoppel
### (against Defendant Moreno)

195. Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

196.   In his April 9, 2018 recorded voicemail to Plaintiff, Defendant Moreno, acting *ultra vires*, promised Plaintiff that the April 10, 2018 "miscellaneous hearing" pertained to the <u>civil</u> $1,600 credit card dispute.

197.   Through his false and deceptive representations to Plaintiff, Defendant Moreno reasonably expected to induce action or forbearance of a definite and substantial character on the part of Plaintiff.

198.   Defendant Moreno's promise did, in fact, induce such action or forbearance by Plaintiff.

199.   *Inter alia,* reasonably assuming that the hearing pertained to the <u>civil</u> credit card matter— as expressly promised by Defendant Moreno—Plaintiff appeared at the April 10, 2018 "miscellaneous hearing" without legal counsel present.

200.   Defendant Moreno's promise that the April 10, 2018 hearing pertained to a <u>civil</u> matter was clear, definite, and unambiguous.

201.   Only through enforcement of Defendant Moreno's April 9, 2018 *ultra vires* promise to Plaintiff could injustice have been prevented.

**COUNT IX**
**Joint and Several Liability for the Republication of Libel *per se***
**(against Defendants Moreno, Breaking Media, and Mystal)**

202.   Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

203.   In the Commonwealth of Massachusetts, an original publisher of defamatory material is liable for subsequent republication within this Commonwealth where "the repetition was authorized or intended by the original defamer, or **the repetition was reasonably to be expected**." (Emphasis supplied) Restatement (Second) of Torts § 576.

204.   The Supreme Judicial Court has consistently held that original publishers such as Defendants Moreno and Breaking Media are liable for all subsequent republications. <u>See, e.g.</u>, <u>Murphy v. Bos. Herald, Inc.</u>, 449 Mass. 42, 65 (2007).

205.   Defendants Moreno, Breaking Media, and Mystal are all "original publishers" of *per se* defamation against Plaintiff.

206. Upon information and belief, on or about October 29, 2018, the defamatory statements were republished within this Commonwealth to Plaintiff and A Medium Corporation (hereinafter, "Medium"), a third party. **[EXHIBIT E]**.

207. On December 5, December 7, and once again on December 10, 2018, three (3) separate "republications" were made through court filings[8] by third parties Medium and Zurich American Insurance Company (hereinafter, "Zurich") containing the defamatory representations made by Defendants Moreno and Breaking Media.

208. All three of the December 5, December 7, and December 10, 2018 "republications" were physically made within this Commonwealth.[9]

209. Defendants Moreno and Breaking Media knew, or were reckless in not knowing, that their defamatory representations would likely be republished within this Commonwealth.

210. Defendants Moreno and Breaking Media knew, or were reckless in not knowing, that the republication of the subject defamatory representations would cause Plaintiff further irreparable harm.

211. Defendants Moreno and Breaking Media are jointly and severally liable for all of the subsequent republications.

## COUNT X
### Violations of Mass. Gen. Laws ch. 214 § 1B
### and art. XIV of the Massachusetts Declaration of Rights
### (against Defendant Moreno)

212. Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

213. Pursuant to Mass. Gen. Laws ch. 214 § 1B ("Right of Privacy"), "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy."

---

[8] See, e.g., Mullane v. Zurich American Insurance Company et al., Docket No. 1:18-CV-12412 (D. Mass.).

[9] *Arguendo*, while the "republishers" of the defamatory representations may have been protected under the Massachusetts "litigation privilege," in no way does the said privilege extend to third-parties such as Defendants Moreno and Breaking Media who, as non-parties to that action, lack standing to invoke it.

214.   In this Commonwealth, every person has reasonable claim, within limits, to control the flow of personal information about him. Commonwealth v. Blood, 400 Mass. 61, 69 (1987).

215.   *Inter alia,* art. XIV of the Massachusetts Declaration of Rights guarantees all citizens of this Commonwealth such as Plaintiff a reasonable expectation of privacy.

216.   *Inter* alia, by unlawfully obtaining Plaintiff's confidential employment records at the USAO, Defendant Moreno's egregious violations of the Fourth Amendment of the United States Constitution and the Privacy Act of 1974, 5 U.S.C. § 552a *et seq.* give rise to a state law invasion of privacy claims.[10]

217.   At all times relevant hereto, Defendant Moreno's acts and omissions were willful, knowing, and deliberate.

218.   Pursuant to Mass. Gen. Laws ch. 4 § 7(c), the disclosure of personnel files or information, or any other materials or data relating to a specifically-named individual such as Plaintiff, may give rise to an invasion of privacy claim.

219.   Defendant Moreno knew, or was willful in not knowing, that his invasion of Plaintiff's right to privacy by unlawfully obtaining Plaintiff's confidential employment records without a warrant would cause Plaintiff serious and irreparable harm.

220.   The publication of unsubstantiated allegations of criminal conduct gives rise to a cognizable claim for invasion of privacy. See, e.g., Haggerty v. Globe Newspaper Co., 383 Mass. 406 (1981).

221.   The information from Plaintiff's employment records, which was publicly disclosed, "published," and "republished" by Defendants, was in no way a matter of "public concern" as it entailed a private matter.

222.   Defendant Moreno's invasion of Plaintiff's right to privacy was unreasonable, substantial, and serious.

223.   At all times relevant hereto, Plaintiff had a reasonable expectation that his USAO employment records would be kept private.

---

[10] The Privacy Act of 1974 does **not** preempt causes of action under local or state law for common law invasion of privacy torts. Alexander v. FBI, 971 F. Supp. 603, 610-11 (D.D.C. 1997); accord O'Donnell v. United States, 891 F.2d 1079, 1084-85 (3d Cir. 1989).

224. Defendant Moreno intruded upon Plaintiff's solitude and seclusion, together with Plaintiff's right to be left alone.

225. Defendant Moreno acted without authorization, and intentionally invaded the private affairs of Plaintiff.

226. The invasion of privacy, especially the unauthorized access of Plaintiff's confidential employment records, is highly offensive to any reasonable person.

227. As a direct consequence of Defendant Moreno's invasion of privacy, Plaintiff foreseeably incurred substantial harm, including, without limitation, the foreseeable mental anguish and suffering therefrom.

228. Defendant Moreno herein were the proximate cause of Plaintiff's harm.

229. Defendant Moreno acted with "actual malice" by maliciously and wantonly invading Plaintiff's right to privacy.

**COUNT XI**
**Invasion of Privacy—Intrusion upon Seclusion and Solitude**
**In Violation of the Common Law of the State of Florida**
**and Fla. Const. art. I, § 23**
**(against Defendant Moreno)**

230. Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

231. The federal right to privacy extends protection in certain circumstances against disclosure of personal matters. In Florida, a person's right to privacy is independently protected by its state constitution. Rasmussen v. S. Fla. Blood Serv., Inc., 500 So. 2d 533, 535 (Fla. 1987).

232. Fla. Const. art. I, § 23 affords individuals such as Plaintiff protection against the increasing collection, retention, and use of information relating to all facets of an individual's personal life. This includes the unlawful and unauthorized procurement of confidential employment records.

233. As further explained hereinabove, Defendants Moreno intentionally, willfully, and knowingly invaded Plaintiff's right to privacy of a "private matter," and intruded upon Plaintiff's right to seclusion and solitude.

234. The intrusion was unlawful, unauthorized, and undertaken by Defendant Moreno without Plaintiff's express or implied consent thereto.

235. At all times relevant hereto, Plaintiff had a reasonable expectation that his USAO employment records would be kept private.

236. Defendant Moreno unreasonably intruded upon Plaintiff's solitude and seclusion, together with Plaintiff's right to be left alone.

237. Defendant Moreno acted without authorization, and intentionally invaded the private affairs of Plaintiff.

238. The invasion of privacy, especially the unauthorized and unlawful access of Plaintiff's confidential employment records, is highly offensive to any reasonable person.

239. As a direct consequence of Defendant Moreno's invasion of privacy, Plaintiff foreseeably incurred substantial harm, including, without limitation, the foreseeable mental anguish and suffering therefrom.

240. Defendant Moreno was the proximate cause of Plaintiff's harm.

241. Defendant Moreno acted with "actual malice" by maliciously and wantonly invading Plaintiff's right to privacy.

## COUNT XII
### Public Disclosure of Private Facts
### (against Defendant Moreno)

242. Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

243. *Inter alia,* on a personal telephone call with Attorney Greenberg, Defendant Moreno discussed Plaintiff's confidential employment record.

244. Defendant Moreno knew, or had reason to know, that the disclosed and "published" private matter would likely become known to countless other persons and/or the general public, including, without limitation, employees at the USAO and SEC.

245. Defendant Moreno's subsequent disclosure, publication, and discussion in open court— and on the record—of Plaintiff's confidential and unlawfully-obtained employment record

was not protected by any "litigation privilege," as it did not remotely relate to the civil action or to the subject $1,600 credit card dispute.

246. The said disclosure was *ultra vires* and extra-judicial, as Defendant Moreno acted in the absence of any jurisdiction therefor.

247. By violating the Fourth Amendment of the United States Constitution and the Privacy Act of 1974, *inter alia*, Defendant Moreno willfully and knowingly violated Plaintiff's right to privacy.

248. Plaintiff reasonably expected that his employment records would remain private.

249. The public disclosure of private facts, as well as the unauthorized access of Plaintiff's confidential employment records, is highly offensive to any reasonable person.

250. As a direct consequence of Defendant Moreno's public disclosure of private facts, Plaintiff foreseeably incurred substantial harm, including, without limitation, the foreseeable mental anguish and suffering therefrom.

251. Defendant Moreno was the proximate cause of Plaintiff's harm.

252. Defendant Moreno acted with "actual malice" by maliciously and wantonly invading Plaintiff's right to privacy and thereupon publicly disclosing and "publishing" numerous private facts therefrom.

## COUNT XIII
### Abuse of Process
### (against Defendant Moreno)

253. Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

254. Acting *ultra vires* and without jurisdiction, Defendant Moreno unlawfully misused a civil proceeding for a purpose for which it is not designed.[11]

255. Defendant Moreno used the civil proceeding for an ulterior and illegitimate purpose.

---

[11] Courts have held that a non-party to the underlying proceeding such as Defendant Moreno may be held liable for malicious abuse of process where the non-party was an "active participant" in the proceeding. See, e.g., Harvey v. Thi of N.M., No. 12-CV-727 MCA/LAM, 2015 U.S. Dist. LEXIS 182695 (D.N.M. Mar. 31, 2015).

256.  *Inter alia,* Defendant Moreno used a civil $1,600 credit card dispute to discuss Plaintiff's confidential—and wholly unrelated—employment records which Defendant Moreno had unlawfully obtained without a warrant in violation of the Privacy Act of 1974 and the Fourth Amendment of the United States Constitution.

257.  As a direct consequence of Defendant Moreno's abuse of process, Plaintiff foreseeably incurred substantial harm, including, without limitation, the foreseeable mental anguish and suffering therefrom.

## COUNT XIV
### Individual and Personal Capacity Liability pursuant to
### Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)
### (against Defendant Moreno)

258.  Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

259.  In Bivens, supra, the U.S. Supreme Court created a private right of action for damages against federal officers who are alleged to have violated a citizen's constitutional rights. See Correctional Services Corp. v. Malesko, 534 U.S. 61, 66 (2001); Bivens, 403 U.S. 388, 91 (1971).

260.  Bivens promotes a right of action under federal common law against individual federal officials when the only alternative is a Federal Tort Claims Act (hereinafter, "FTCA") claim against the United States, which the Supreme Court has held is **insufficient to deter unconstitutional acts by individuals.** Carlson v. Green, 446 U.S. 14, 18-23 (1980); Correctional Services Corp. v. Malesko, 534 U.S. 61, 67-68 (2001); see 28 U.S.C. §2679(b)(2).

261.  *Arguendo,* should this Honorable Court determine that the acts and omissions of Defendant Moreno, as described herein, were within the scope of his employment, Plaintiff would still have numerous cognizable claims against Defendant Moreno—in his individual capacity[12]—pursuant to Bivens, supra.

---

[12] Even under a Bivens theory of liability, the United States lacks standing in the instant action as liability would be imposed against Defendant Moreno personally and in his individual capacity.

262. Pursuant to same, all of the constitutional violations, as described hereinabove, are actionable.

263. Should this Court determine that the alleged conduct was within the scope of Defendant Moreno's employment, as a result, Defendant Moreno's acts and omissions were necessarily undertaken "under color of law."

264. Defendant Moreno's acts and omissions violated, without limitation, the First, Fourth, Fifth, and Sixth Amendments of the United States Constitution.

265. Defendant Moreno's acts and omissions violated, without limitation, the separation of powers doctrine pursuant to Article II and Article III of the United States Constitution.

266. Plaintiff foreseeably incurred irreparable harm from the aforesaid constitutional violations.

**COUNT XV**
**Civil Conspiracy**
**(against Defendants Moreno, Breaking Media, and Mystal)**

267. Plaintiff restates and re-avers all of the foregoing paragraphs, and hereby incorporates them by reference as if fully restated herein.

268. Upon information and belief, Defendant Moreno entered into an agreement and/or understanding, and otherwise conspired with, Defendants Mystal and Breaking Media to:

    (i)    defame Plaintiff;

    (ii)    deprive Plaintiff of his right to privacy, including, without limitation, his confidential employment records, in violation of the Privacy Act of 1974, *inter alia*;

    (iii)    tortuously interfere with Plaintiff's economic, business, and contractual relationships; and

    (iv)    to engage in all other unlawful conduct as described hereinabove to the foreseeable detriment of Plaintiff.

269. Defendants together, and each of them individually, published one or more of the actionable and defamatory representations in furtherance of this common scheme, and Defendants together, and each one of them individually, did so knowingly and willfully.

270.   Defendants conspired to and did publish the actionable and offensive statements without any cloak of privilege, and with actual malice.

271.   The common scheme of Defendants was the proximate cause of Plaintiff's significant harm incurred therefrom.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all claims, issues, and questions of fact so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** on the aforesaid grounds and premises, Plaintiff prays for relief and respectfully requests that this Honorable Court:

(i)     Enter judgment in favor of Plaintiff and against Defendants on all counts of the complaint;

(ii)    Issue a mandatory injunction and order permanently barring and enjoining Defendants from engaging in such unlawful conduct;

(iii)   Issue a mandatory injunction ordering Defendants Breaking Media and Mystal to remove the subject defamatory article, together with any and all other defamatory representations regarding Plaintiff, from the internet and from its website;

(iv)    Grant declaratory relief against Defendant Moreno for all of the unlawful acts and omissions as described herein;

(v)     Award Plaintiff all damages sustained as a result of Defendants' unlawful conduct pursuant to all counts herein, including, but not limited to, economic damages vis-à-vis the two (2) subject contracts; lost future earnings and economic losses; monetary compensation for Plaintiff's loss of reputation, mental anguish, emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, loss of self-confidence, and loss of personal dignity; and damages for Plaintiff's emotional pain and suffering, together with all other physical or mental injuries;

(vi)    Award consequential damages in an amount to be determined at trial;

(vii)   Award expectancy damages in an amount to be determined at trial;

(viii)   Award treble damages as permitted under Mass. Gen. Laws ch. 93A § 9, in an amount to be determined at trial;

(ix)   Award punitive damages against Defendant Moreno pursuant to Bivens, supra, in an amount to be determined at trial;

(x)   Award Plaintiff attorneys' fees, costs, and pre- and post-judgment interest; and

(xi)   Grant such further relief as this Court may deem just and proper.


Respectfully submitted,


_____
JONATHAN MULLANE,
Plaintiff *pro se*
60 Clyde Street
Unit #1
Somerville, MA 02145
Tel.: (617) 800-6925
j.mullane@icloud.com

DATED: December 26, 2018


**VERIFICATION**

I, JONATHAN MULLANE, under oath, hereby state that I have reviewed the within Verified First Amended Complaint, and, based upon my own personal knowledge, hereby verify and affirm that the allegations contained therein are true and accurate, and hereby certify that no material facts have been omitted therefrom.

Signed under the pains and penalties of perjury this 26 th Day of December, 2018.


_____
JONATHAN MULLANE