**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                               )
Jonathan Mullane,              )
                               )
                Plaintiff,     )
                               )        Civil Action
        v.                     )        No. 18-12618-PBS
                               )
Breaking Media, Inc., and      )
Elie Mystal,                   )
                               )
                Defendants.    )
_____)
```

<u>**MEMORANDUM AND ORDER**</u>

January 6, 2020

Saris, D.J.

Plaintiff, Jonathan Mullane, a former student of the University of Miami Law School, brings this action against[1] Breaking Media, Inc., and journalist Elie Mystal alleging that an article on the legal website "Above the Law" was defamatory.

Mullane asserts claims against Mystal and Breaking Media for libel <u>per se</u>, tortious interference with contractual relations, tortious interference with advantageous business relations, tortious interference with prospective economic advantages, intentional infliction of emotional distress, unfair and deceptive practices in violation of Mass. Gen. Laws ch. 93A

---

[1] This action initially included other defendants who have since been dismissed. Docket No. 134.

§ 9, joint and several liability for the republication of libel _per se_, and civil conspiracy.

Defendants' motion to dismiss (Docket No. 80) is **ALLOWED** and Plaintiff's remaining motions (Docket Nos. 103, 140, 141, 142, 143, 144, 145, 157, 162)[2] are **DENIED** as **MOOT**. The motions of Plaintiff's father, E. Peter Mullane, related to intervention in this case (Docket Nos. 138, 158, 161) are **DENIED** as **MOOT**.

## BACKGROUND

### I.   Factual Background

The facts are primarily drawn from the Plaintiff's Second Amended Complaint and the documents referenced therein, including the attached transcript of the Court hearing. Docket No. 57; Docket No. 57-1.

#### A. Mullane's Hearing with Judge Moreno

Mullane was a student at the University of Miami School of Law beginning in the fall of 2017. See Docket No. 57-1 at 11;

---

[2] The Plaintiff's pending motions include a Motion for Leave to Conduct Discovery Limited to the Issue of Personal Jurisdiction (Docket No. 103), a Motion for Reconsideration of the Order on Report and Recommendations (Docket No. 140), a Motion to Strike Defendants' Motion to Dismiss (Docket No. 141), a Motion for Spoliation Sanctions and for an Entry of Default (Docket No. 142), a Third Motion for Judicial Notice (Docket No. 143), a Motion for Leave to Submit Supplemental Authorities (Docket No. 144), a Motion for a Final Appealable Order Pursuant to Fed. R. Civ. P. 54(b) (Docket No. 145), a Motion for Leave to File Supplemental Authorities (Docket No. 157), and a Motion for Leave to File Supplement to Motion for Reconsideration (Docket No. 162).

Docket No. 138-1 at 10-12. During the spring of 2018, Mullane served as a legal intern with the United States Attorney's Office ("USAO") in the Southern District of Florida. Docket No. 57 ¶¶ 7, 10.

While employed with the USAO, Mullane was party to a pro se civil lawsuit involving a credit card dispute pending before Judge Federico Moreno in the United States District Court for the Southern District of Florida. Docket No. 22 at 2. In April 2018, Mullane entered Judge Moreno's chambers, allegedly to request that the clerk make an entry of default in connection with this personal civil dispute. See Docket No. 57 ¶ 83-84.

Judge Moreno subsequently summoned Mullane to a hearing on April 10, 2018. Docket No. 57 ¶ 52. During the hearing, Mullane appeared to acknowledge that he had sought to file a writ of mandamus in his pending case. See Docket No. 57-1 at 13:14-18 ("THE COURT:  Did you mention the word petition for mandamus? . . . MR. MULLANE: I did."); id. at 25:17-19 ("THE COURT: What was the question? MR. MULLANE: I can't remember exactly. It was about how to file the mandamus request or something."). But see id. at 7:19-20 ("MR. MULLANE: I said that I had a specific question about the entry of default."). Judge Moreno reprimanded Mullane for his actions. See generally Docket No. 57-1 at 4-30. Mullane was terminated from his internship at the USAO soon after the hearing. Docket No. 57 ¶ 21.

**B. "Above the Law" Publishes Article on the Hearing**

On April 30, 2018, the legal news publication "Above the Law" published an article, titled "Judge Detonates Pro Se Law Student So Hard I Now Must Defend a Dumb Kid" (the "Article"). Docket No. 57 ¶ 68; Docket No. 57-1 at 32-36. The Article was authored by Mystal, the Executive Editor of "Above the Law." Docket No. 57 ¶ 68, 77. "Above the Law" is owned and published by Breaking Media. Docket No. 23 ¶ 4.

The Article describes the April 10, 2018 hearing. It states, <u>inter alia</u>:

- "[Mullane] was trying to file a petition of mandamus -— which basically asks an appellate court to order Judge Moreno to work on his case faster. That's pretty rude. He didn't know where to file the petition, and ended up asking the judge's career clerk, in the judge's chambers, ex-parte, what to do about it. That's pretty dumb. Initially, the clerk wasn't even going to let him in, but Mullane said he worked for the U.S. Attorney's office (he's an intern), which gained him access to the chambers to discuss his own personal case. That's pretty unethical."

- "Basically Mullane was an idiot . . . ."

- "[T]o gain entry into those chambers, he dropped his USAO cred, even though he was just an intern, and even though he

4

was there for reasons that had nothing to do with his
internship."

- "It also appears that Mullane is a little entitled ponce .
  . . ."

- "Turns out the kid's father is also an attorney . . .
  wonder if that helped him get his sweet internship."

- "Okay, so Jon Mullane is a little brat who [sic] with a
  USAO internship who had an ex-parte conversation in judge's
  chambers while trying to file a motion arguing that the
  judge was lazily ignoring his pro se complaint."

- "If Mullane is a dauphin . . . ."

- "The kid wasn't trying to upend the wheels of justice, he
  made a series of dumb mistakes."

Docket No. 57-1 at 32-36.

Following the publication of the Article, the Securities
Exchange Commission ("SEC") rescinded Mullane's invitation to
serve as a "Student Honors Volunteer." Docket No. 57-1 at 43.
Mullane later withdrew from the University of Miami School of
Law. Docket No. 57 ¶ 125. He claims that the Defendants' actions
caused him economic, professional and emotional harm. Id. ¶ 110-
126.

## II.   **Procedural Background**

Mullane filed suit against Judge Moreno and Breaking Media in Suffolk County Superior Court on November 27, 2018. Docket No. 1-1. The United States then removed the case to federal court. Docket No. 1. After Mullane added additional parties via a First Amended Complaint, Docket No. 14, and defendants filed motions to dismiss, Docket No. 7, Docket No. 21, the case was referred to Magistrate Judge Dein, Docket No. 37.

On August 13, 2019, Magistrate Judge Dein issued a Report and Recommendation on twelve pending motions in this case. Docket No. 120. This Court adopted the Report and Recommendation as pertaining to the defendants United States of America, Federal District Court Judge Federico A. Moreno, and Assistant U.S. Attorney ("AUSA") Alison W. Lehr. Docket No. 134. During a hearing on October 1, 2019, Defendants Breaking Media and Elie Mystal waived their motion to dismiss based on lack of personal jurisdiction. All parties assented to the Court's ruling, without further hearing, on Defendants' motion to dismiss for failure to state a claim.

## **STANDARD OF REVIEW**

A Rule 12(b)(6) motion is used to dismiss complaints that do not "state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in a complaint must "possess

enough heft" to state a claim to relief that is plausible on its
face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57 (2007).
In evaluating the motion, the Court must accept the factual
allegations in the plaintiff's complaint as true, construe
reasonable inferences in his favor, and "determine whether the
factual allegations in the plaintiff's complaint set forth a
plausible claim upon which relief may be granted." Foley v.
Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014).

## DISCUSSION

## I.   Massachusetts Libel Law and the Fair Report Privilege[3]

### A. Parties' Arguments

The Defendants claim the Article is subject to immunity
under the Fair Report Privilege. Docket No. 22 at 1. They
contend that any factual statements in the Article are accurate
reports of the April 2018 hearing based on the official court
reporter's transcript. Id. at 22. Defendants further argue that
Massachusetts' "actual malice" exception does not apply in this
case, because the Article dealt with a matter of public concern
and Plaintiff cannot show "actual malice" under Mass. Gen. Laws
ch. 231 § 92. Docket No. 26 at 8.

---

[3] As noted above, the Defendants have waived their motion to
dismiss for lack of personal jurisdiction. Both parties have
presented arguments based on Massachusetts law. See, e.g.,
Docket No. 22; Docket No. 26. The Court applies Massachusetts
law in this case.

Mullane responds that the Fair Report Privilege does not apply because the Article contains "homophobic, pejorative language and personal slights" that render it unfair. Docket No. 26 at 15. Mullane also claims that the Article was inaccurate in two respects. First, Mullane claims the Article inaccurately reported that Mullane attempted to request a writ of mandamus in his Florida lawsuit. Mullane alleges that he instead sought an entry of default or to obtain copies of the record. Docket No. 57 ¶¶ 83, 90. Second, Mullane argues that the Article contains the "factually false" statement that "Plaintiff had committed a criminal offense." Docket No. 26 at 5.

Finally, Mullane argues that Defendants cannot assert the Fair Report Privilege in this case because it regards a matter of private concern and Defendants acted with "actual malice." Id. at 3, 6.

**B. Legal Standard**

To establish libel under Massachusetts law, a plaintiff must establish "(1) that the defendant published a written statement; (2) of and concerning the plaintiff; that was both (3) defamatory and (4) false; and (5) either caused the plaintiff economic loss, or is actionable without proof of economic loss." Noonan v. Staples, 556 F.3d 20, 25 (1st Cir. 2009).

Massachusetts recognizes "a privilege for fair and accurate reports of official actions and statements." Howell v. Enter. Publ'g Co., LLC, 920 N.E.2d 1, 13 (Mass. 2010). The privilege provides immunity "from liability for claims arising out of such reports." Yohe v. Nugent, 321 F.3d 35, 42 (1st Cir. 2003). To qualify as "fair and accurate" reporting, an article need only give a "rough-and-ready summary" that was "substantially correct." Id. at 43. Importantly, "accuracy" refers to "the factual correctness of the events reported and not to the truth of the events that actually transpired." Id. at 44. The Fair Report Privilege encompasses reports on judicial proceedings, even if the reports are not "in technically precise language." Ricci v. Venture Magazine, Inc., 574 F. Supp. 1563, 1567 (D. Mass. 1983); see also Sibley v. Holyoke Transcript-Telegram Publ'g Co., 461 N.E.2d 823, 826 (Mass. 1984). Massachusetts requires "that the privilege be construed liberally and with an eye toward disposing of cases at an early stage of litigation." Howell, 920 N.E.2d at 15.

Notwithstanding the Fair Report Privilege, a Massachusetts statute "permits a plaintiff to recover for a truthful defamatory statement published in writing (or its equivalent) with actual malice . . . except as confined by" the First Amendment. Phelan v. May Dep't Stores Co., 819 N.E.2d 550, 553 n.4 (Mass. 2004) (citing Mass. Gen. Laws ch. 231 § 92). Under

the state statute, "actual malice" is defined as "ill will" or "malevolent intent." <u>Noonan</u>, 556 F.3d at 29 (distinguishing "actual malice" under the Massachusetts statute from the First Amendment standard for "actual malice" as defined in <u>New York Times v. Sullivan</u>, 376 U.S. 254, 280 (1964)). The Massachusetts Supreme Judicial Court has declared § 92 unconstitutional as applied to matters of public concern. <u>Shaari v. Harvard Student Agencies, Inc.</u>, 691 N.E.2d 925, 929 (Mass. 1998).

The U.S. Supreme Court has defined matters of public concern as those that can be "fairly considered as relating to any matter of political, social, or other concern to the community." <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983). Courts look to the "content, form, and context" to determine whether speech addresses matters of public or private concern. <u>Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.</u>, 472 U.S. 749, 761 (1985). "[I]t is sufficient that the speech concern matters in which even a relatively small segment of the general public might be interested." <u>Levinsky's, Inc. v. Wal-Mart Stores, Inc.</u>, 127 F.3d 122, 132 (1st Cir. 1997) (quoting <u>Roe v. City of San Francisco</u>, 109 F.3d 578, 585 (9th Cir. 1997)).

Overall, summary disposition of defamation claims is "especially favored" in Massachusetts because meritless cases put "an unjustified and serious damper on freedom of expression" and "the costs of litigation may induce an unnecessary and

undesirable self-censorship." King v. Globe Newspaper Co., 512

N.E.2d 241, 243 (Mass. 1987).

### C. Analysis

The Fair Report Privilege protects many of the statements

challenged by Mullane, including the portions of the Article

that directly quote the court reporter's transcript of the April

10, 2018 hearing and the portions that summarize the topics

discussed in that hearing. See Butcher v. Univ. of Mass., No.

SJC-12698, 2019 WL 7372261, at *5 n.13 (Mass. Dec. 31, 2019)

(explaining that the privilege "clearly would apply 'to a public

hearing before a judge'") (quoting Howell, 920 N.E.2d at 18).

Compare Docket No. 57-1 at 33 ("[Mullane] was trying to file a

petition of mandamus -- which basically asks an appellate court

to order Judge Moreno to work on his case faster") with id. at

10, 12-14, 26, 29 (transcript); id. at 33 ("He didn't know where

to file the petition, and ended up asking the judge's career

clerk, in the judge's chambers, ex-parte, what to do about it")

with id. at 5-7, 13-14 (transcript); id. at 33 ("Initially, the

clerk wasn't even going to let him in, but Mullane said he

worked for the U.S. Attorney's office (he's an intern), which

gained him access to the chambers to discuss his own personal

case") with id. at 6-7, 12, 16-17 (transcript); id. at 33 ("[T]o

gain entry into those chambers, he dropped his USAO cred, even

though he was just an intern, and even though he was there for

11

reasons that had nothing to do with his internship") with id. at 6-7, 12, 16-17 (transcript); id. at 34 ("Turns out the kid's father is also an attorney") with id. at 15 (transcript); id. at 34 ("[Mullane] had an ex-parte conversation in judge's chambers while trying to file a motion arguing that the judge was lazily ignoring his pro se complaint") with id. at 5-7, 10, 12-14, 26, 29 (transcript). These statements provide a "rough-and-ready summary" of the hearing that was "substantially correct." See Yohe, 321 F.3d at 42; see also Butcher, 2019 WL 7372261, at *9 (applying the privilege where challenged statements in news article were "substantively identical" to statements made by official actors).

Mullane's arguments regarding the Article's accuracy fail because "'accuracy' for fair report purposes refers only to the factual correctness of the events reported and not to the truth about the events that actually transpired." Yohe, 321 F.3d at 44. As to the question of what Mullane sought to file in his Florida case, Mullane stated during the April 2018 hearing that he was seeking a petition for mandamus. Docket No. 57-1 at 13, 26. As to potential accusations of "criminal conduct," the Article only summarized statements made by Judge Moreno. See id. at 6-7, 12, 16-17. The reporting sections of the Article are therefore protected by the Fair Report Privilege.

Plaintiff argues that Massachusetts' "actual malice" exception applies in this case because of the pejorative language in the Article. Mass. Gen. Laws ch. 231 § 92 is inapplicable here because the Article reported on a matter of public concern -- a court proceeding. A contentious interaction between a federal judge and a law student can be "fairly considered" as a matter of "concern to the community." <u>Connick</u>, 461 U.S. at 146.

## II.  <u>First Amendment</u>

### A. Arguments

Mullane also challenges Defendants' statements referring to Mullane as "rude," "dumb," "unethical," a "little entitled ponce," and a "dauphin." <u>See</u> Docket No. 57 ¶¶ 73, 110. The Article also contains the following potentially defamatory statement: "Turns out [Mullane's] father is an attorney -- wonder if that helped him get his sweet internship." <u>Docket No. 57-1 at 34.</u> Defendants argue that these statements are protected by the First Amendment because they represent the author's opinions.

### B. Legal Standard

The First Amendment, made applicable to the states through the Fourteenth Amendment, limits "the <u>type</u> of speech which may be the subject of state defamation actions." <u>Piccone v. Bartels</u>, 785 F.3d 766, 771 (1st Cir. 2015) (quoting <u>Milkovich v. Lorain</u>

Journal Co., 497 U.S. 1, 16 (1990)). In cases involving a private figure-plaintiff[4] and a media defendant, the First Amendment requires that statements on matters of public concern "be provable as false before there can be liability under state defamation law." Milkovich, 497 U.S. at 19-20 (citing Phila. Newspapers, Inc. v. Hepps, 475 U.S. 767, 777 (1986)).

Statements of pure opinion are constitutionally protected because "they are not susceptible of being proved true or false." Piccone, 785 F.3d at 771. A statement "couched as an opinion" may be actionable if it "presents or implies the existence of facts which are capable of being proven true or false." Levinsky's, 127 F.3d at 127.  Thus, "the relevant question is not whether challenged language may be described as an opinion, but whether it reasonably would be understood to declare or imply provable assertions of [defamatory] fact." Phantom Touring, Inc. v. Affiliated Publ'ns, 953 F.2d 724, 727 (1st Cir. 1992). The court may determine as a matter of law whether a statement is a pure opinion or a verifiable fact. See Piccone, 785 F.3d at 772. This requires examining "the totality of the circumstances in which the specific challenged statements were made, including the general tenor and context of the conversation." Id.

---

[4] For the purposes of this opinion, the Court assumes without deciding that Mullane is a private figure.

Even if an opinion implies a provably false assertion of fact, that statement will not be actionable if "it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." Riley v. Harr, 292 F.3d 282, 289 (1st Cir. 2002) (quoting Gray v. St. Martin's Press, Inc., 221 F.3d 243, 248 (1st Cir. 2000)). A speaker is thus protected from defamation liability if he "communicates the non-defamatory facts that undergird his opinion." Piccone, 785 F.2d at 771; see also Riley, 292 F.3d at 289 ("[W]hen an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment."). The "crucial distinction" is whether the speaker's statements can reasonably be interpreted to suggest that the speaker had access to information not accessible to others. Phantom Touring, 953 F.2d at 730-31. Compare Milkovich, 497 U.S. at 5 n.2, 21-22 (allowing suit where author claimed to be in a "unique position" to verify defamatory allegations) with Phantom Touring, 953 F.2d at 731 (barring suit where nothing in challenged articles indicated that author "had more information" about the defamatory allegations "than was reported in the articles").

### C. Analysis

"[R]idicule and simple verbal abuse" do not give rise to liability for defamation. See Fleming v. Benzaquin, 454 N.E.2d 95, 100 (Mass. 1983). Many of the challenged statements -- such as those referring to Mullane as "rude," "dumb," "unethical," a "little entitled ponce," or a "dauphin" -- are mere "epithets" that are "insufficiently fact-based" to ground a defamation claim. See Levinsky's, 127 F.3d at 130 (holding that defendant's description of competitor's store as "trashy" was not actionable); see also Letter Carriers v. Austin, 418 U.S. 264, 284-86 (1974) ("traitor"); Greenbelt Coop. Publ'g Ass'n v. Bresler, 398 U.S. 6, 13-14 (1970) ("blackmail"); Phantom Touring, 953 F.2d at 728 ("a rip-off, a fraud, a scandal, a snake-oil job"); McCabe v. Rattiner, 814 F.2d 839, 842-43 (1st Cir. 1987) ("scam").

Mullane argues that the Defendants' use of the word "ponce" is actionable because it is a "homophobic and derogatory" manner of "referring to [Mullane] as an 'effeminate man.'" Docket No. 26 at 8; see also Docket No. 57 ¶ 111. But the First Amendment "shield[s]" such "figurative language." See Levinsky's, 127 F.3d at 128 (explaining that "our society has long since passed the stage at which the use of the word 'bastard' would occasion an investigation into the target's lineage or the cry 'you pig' would prompt a probe for a porcine pedigree"); see also Sindi v.

16

El-Moslimany, 896 F.3d 1, 14 (1st Cir. 2018) (explaining that
statements of "imaginative expression" or "rhetorical hyperbole"
are not actionable).

The Article also contains this statement: "Turns out
[Mullane's] father is an attorney -- wonder if that helped him
get his sweet internship." Docket No. 57-1 at 34. This statement
might imply a defamatory fact. But here, "although the
allegation of [nepotism] might be provable as true or false, the
sum effect of the format, tone, and entire content of the
[Article] is to make it unmistakably clear that the author was
expressing a point of view only, rather than stating actual
facts" about how Mullane obtained his internship. See Riley, 292
F.3d at 290 (citation omitted) (internal quotations omitted);
see also Phantom Touring, 953 F.2d at 729 (explaining that the
author's "snide, exasperated language indicated that his
comments represented his personal appraisal of the factual
information contained in the article"). The statement is an
opinion protected by the First Amendment.

Defendants are also protected from defamation liability
because they do not suggest that the statement was "arrived at
on the basis of undisclosed facts. On the contrary, the
[Article] set forth the facts on which the conclusion[]
purported to be based." See Friedman v. Bos. Broads., Inc., 522
N.E.2d 959, 962 (Mass. 1998). Because the Article provided the

17

"full factual basis" for the statement -- namely, that Plaintiff's father is an attorney -- the Article "cannot reasonably be interpreted to suggest that the author had access to information about plaintiff's claim that was not accessible to others." See <u>Ayyadurai v. Floor64, Inc.</u>, 270 F. Supp. 3d 343, 360 (D. Mass. 2017). The Article "simply posed [a] question[] and suggested [an] answer[], as a matter of opinion." <u>King</u>, 512 N.E.2d at 246. The Defendants' statement is "speculative" and at most amounts to a "personal conclusion[] about the information presented." <u>Piccone</u>, 785 F.3d at 774; <u>see also</u> <u>Lyons v. Globe Newspaper Co.</u>, 612 N.E.2d 1158, 1163 (Mass. 1993) (precluding liability where speaker "clearly indicated to the reasonable reader that the proponent of the expressed opinion engaged in speculation and deduction based on the disclosed facts").

The Article is protected by Massachusetts' Fair Report Privilege and the First Amendment. Accordingly, Mullane's claims for libel <u>per se</u> (Count I) and "joint and several liability for the republication of libel <u>per se</u>" (Count IX) must be dismissed.

## III. **Remaining Claims**

Mullane's remaining claims also fail. The Fair Report Privilege and the First Amendment "cannot be evaded simply by relabeling a deficient claim." <u>Butcher</u>, 2019 WL 7372261, at *11; <u>see also</u> <u>Yohe</u>, 321 F.3d at 44 ("A plaintiff cannot evade the protections of the fair report privilege merely by re-labeling

18

his claim."); Hustler Magazine, Inc. v. Falwell, 485 U.S. 46,
56-57 (1988) (holding that a plaintiff cannot sidestep the First
Amendment by suing for emotional distress rather than
defamation).

### A. Tortious interference with contractual relations (Count III), tortious interference with advantageous business relations (Count IV), and tortious interference with prospective economic advantages (Count V)

Under Massachusetts law, a plaintiff claiming tortious
interference with contractual relations must establish that he
(1) "had a contract with a third party," (2) "which the
defendant knowingly induced the third party to break," (3) that
the interference "was improper in motive or means," and (4) that
the interference caused the plaintiff harm. Sindi, 896 F.3d at
23 (quoting Abramian v. Pres. & Fellows of Harvard Coll., 731
N.E.2d 1075, 1088 (Mass. 2000)).  Plaintiffs claiming tortious
interference with business relations or prospective economic
advantages must similarly allege that defendants knowingly
induced the breaking of a business or economic relationship,
with improper motive or means. Id. at 26. "Improper means" can
include the commission of defamation. Id. at 24.

Mullane has failed to explain how Defendants could have
interfered with his internship with the U.S. Attorney's Office,
given that his internship concluded before the Article was
published. Docket No. 22 at 10-11. Mullane also fails to provide

more than conclusory allegations that the Defendants knew of
Mullane's relationship with the SEC at the time the Article was
published. Mullane's tortious interference claims are simply
recycled versions of his defamation claim and cannot succeed.
See Piccone v. Bartels, 40 F. Supp. 3d 198, 201-02 (D. Mass.
2015), aff'd, 785 F.3d 766 (1st Cir. 2015).

**B. Intentional infliction of emotional distress (Count VI)**

A plaintiff claiming intentional infliction of emotional
distress (IIED) under Massachusetts law must show that (1) the
defendants "intended to inflict emotional distress" or "knew or
should have known that emotional distress was the likely result
of [their] conduct," (2) the defendants' "conduct was extreme
and dangerous, such that it transgressed all possible bounds of
decency and was utterly intolerable in a civilized community,"
and (3) "the conduct caused the plaintiff to suffer emotional
distress, and that this distress was severe and of a nature that
no reasonable person could be expected to endure it." Sindi, 896
F.3d at 21 (internal quotations omitted).

"[A] failed defamation claim cannot be recycled as a tort
claim for negligent or intentional infliction of emotional
distress." Shay v. Walters, 702 F.3d 76, 83 (1st Cir. 2012)
(citing Hustler, 485 U.S. at 56-57); see also Scholz v. Delp, 41
N.E.3d 38, 48 (Mass. 2015). In addition, "Massachusetts law sets
a high bar of proof for severity." Sindi, 896 F.3d at 22; see

also <u>Kennedy v. Town of Billerica</u>, 617 F.3d 520, 530 (1st Cir. 2010) (explaining that "mere emotional responses including anger, sadness, anxiety, and distress . . . are not often legally compensable"). A motion to dismiss is appropriate when the alleged conduct is not sufficiently severe. <u>See</u> <u>Beecy v. Pucciarelli</u>, 441 N.E.2d 1035, 1040 (Mass. 1982).

Defendants' speech, while unkind and insulting, was not "extreme [or] outrageous." "[M]ere insults" do not give rise to liability for intentional infliction of emotional distress. <u>See</u> <u>Roman v. Trustees of Tufts Coll.</u>, 964 N.E.2d 331, 341 (Mass. 2012) (citation omitted).

**C. Violation of Mass. Gen. Laws ch. 93A §§ 2, 9 (Count VII)**

Mullane also alleges a violation of the Massachusetts Consumer Protection Act (MCPA), which "provides a private cause of action for a consumer who 'has been injured,' Mass Gen. Laws ch. 93A § 9(1), by 'unfair or deceptive acts or practices in the conduct of any trade or commerce,' <u>id.</u> § 2(a)." <u>Shaulis v. Nordstrom, Inc.</u>, 865 F.3d 1, 6 (1st Cir. 2017). Mullane points to "all of Defendant Breaking Media's acts and omissions" in support of this claim.  <u>See</u> Docket No. 57 ¶ 197 He specifically alleges that Breaking Media perpetrated "unlawful discrimination based on sexual orientation," ostensibly referring to the Article's use of the word "ponce." <u>See</u> <u>id</u> ¶ 198.

21

Mullane's Chapter 93A claim must be dismissed, because "where allegedly defamatory statements do not support a cause of action for defamation, they also do not support a cause of action under G.L. c. 93A." Albright v. Morton, 321 F. Supp. 2d 130, 142 (D. Mass. 2004) (quoting Dulgarian v. Stone, 652 N.E.2d 603, 609 (Mass. 1995)). The Defendants' statements were protected by the First Amendment and the Fair Report Privilege, and therefore cannot form the basis for liability under Chapter 93A. Cf. A.F.M. Corp. v. Corp. Aircraft Mgmt., 626 F. Supp. 1533, 1551-52 (D. Mass. 1985) (finding defendant did not engage in unfair or deceptive trade practices, where defendants' allegedly defamatory statements were protected by qualified privilege); see also Albright, 321 F. Supp. 2d at 141-42 (dismissing Chapter 93A claim, because statements that allegedly implied that plaintiff was homosexual could not be construed as defamatory).

**D. Civil conspiracy (Count XV)**

Finally, the Second Amended Complaint presents a "Civil Conspiracy" claim, alleging that the Defendants entered into an agreement with Judge Moreno to defame Mullane; deprive Mullane of his right to privacy; tortiously interfere with Mullane's economic, business, and contractual relations; and engage in other, unspecified unlawful conduct. Docket No. 57 at 31. Mullane claims that, in furtherance of this alleged conspiracy,

Judge Moreno improperly provided the Defendants with a
transcript of the April 10, 2018 hearing before the transcript
became public. Docket No. 26 at 13. Mullane also claims the
Defendants published defamatory statements as part of the
conspiracy. Docket No. 57 at 31.

The complaint fails to specify whether the civil conspiracy
claim is based upon common law or a statue. The Court assumes
that the claim is based upon Massachusetts common law.[5] In
Massachusetts, a civil conspiracy typically[6] exists if there is
(1) "a common design or agreement . . . between two or more
persons to do a wrongful act" and (2) "proof of some tortious
act in furtherance of the agreement." Aetna Cas. Sur. Co. v. P &
B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994).

The complaint contains no plausible allegation of a "common
design or agreement" between the Defendants and Judge Moreno.

---

[5] Plaintiff attempted to file a Third Amended Complaint that
included a separate civil RICO claim against Judge Moreno and
AUSA Lehr, but that motion was denied. See Docket No. 104 at 36;
Docket No. 134.

[6] Massachusetts common law also recognizes a civil conspiracy if
"defendants, acting in unison, had some particular power of
coercion over plaintiff that they would not have had if they had
been acting independently." Aetna Cas. Sur. Co. v. P & B
Autobody, 43 F.3d 1546, 1563 (1st Cir. 1994). The complaint does
not allege that this type of civil conspiracy occurred. This
type of conspiracy is "very limited," id., and applies to "rare
instances in which it is the act of agreeing that constitutes
the wrong" such as "[c]ollusive behavior among market
competitors." Snyder v. Collura, 812 F.3d 46, 52 (1st Cir.
2016).

Mullane argues that a common agreement must have existed because only he, Judge Moreno, and counsel for Barclays Bank Delaware allegedly had access to the April 2018 hearing transcript when Defendants published the Article on April 30, 2018. Docket No. 26 at 12; Docket No. 54 at 2. But as noted in the docket entry quoted by Plaintiff himself, the transcript could immediately "be viewed at the court public terminal or purchased by contacting the Court Reporter." Docket No. 54 at 2. The transcript was thus available publicly when the Article was published on April 17, 2018.

The complaint also fails to allege any tortious act. Mullane's argument that Judge Moreno violated his privacy by sending Defendants the hearing transcript is implausible, as explained above. See Britton v. Athenahealth, Inc., No. MICV201202457, 2013 WL 2181654, at *7-8 (Mass. Sup. Ct. May 3, 2013) (dismissing civil conspiracy claim where plaintiff failed to plausibly allege underlying torts). Mullane's arguments regarding the Article also fail, as the Article was protected by the Fair Report Privilege and the First Amendment. The Defendants' publication of the Article did not constitute defamation or tortious interference with Mullane's economic, business, or contractual relations. See Poh v. Mass. Corr. Officers Federated Union, No. 03-11987-RWZ, 2006 WL 1877089, at *7 (D. Mass. July 7, 2006) (rejecting civil conspiracy claim

where plaintiff's allegations of "underlying tortious activity" were unsuccessful). Mullane's civil conspiracy claim must therefore be dismissed.

### ORDER

For the reasons stated above, Defendants' motion to dismiss (Docket No. 80) is **ALLOWED** and Plaintiff's remaining motions (Docket Nos. 103, 140, 141, 142, 143, 144, 145, 157, 162) are rendered **MOOT**. The motions of Plaintiff's father, E. Peter Mullane, related to intervention in this case (Docket Nos. 138, 158, 161) are also rendered **MOOT**.

/s/ Patti B. Saris
Honorable Patti B. Saris
United States District Judge